# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**DANFORD BRAGG,**
**Claimant Below, Petitioner**

**v.) No. 24-ICA-353**     (JCN: 2016030416)

**BLUE CREEK MINING,**
**Employer Below, Respondent**

**FILED**
**March 24, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Danford Bragg appeals the August 6, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Blue Creek Mining ("BCM") filed a response.[1] Mr. Bragg did not reply. The issue on appeal is whether the Board erred in affirming the claim administrator's orders, which 1) denied authorization for right cubital tunnel release; 2) denied authorization for a right shoulder and subacromial steroid injection; and 3) denied the addition of post-traumatic arthritis, cubital tunnel syndrome of the right elbow, and impingement syndrome of the right shoulder to the claim as compensable conditions.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 3, 2016, while employed by BCM, Mr. Bragg's right arm was injured while lifting a gate jack. On the date of the injury, Mr. Bragg presented to the Logan Regional Medical Center ("LRMC") with complaints of pain in the right bicep and right antecubital area. Mr. Bragg reported that he was picking up a coal jack when he felt a pop in his right upper arm. The assessment was a biceps tendon rupture. Mr. Bragg completed an Employees' and Physicians' Report of Occupational Injury or Disease dated June 3, 2016.[2] The physician's section of the claim application was completed by a provider at LRMC and indicated that Mr. Bragg sustained an occupational injury to his right biceps.

---

[1] Mr. Bragg is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq. BCM is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq.

[2] Mr. Bragg had a previous occupational injury on August 3, 2007, JCN: 2007025653; the claim was held compensable for contusion of the right elbow.

1

Mr. Bragg underwent an MRI of his right shoulder on June 14, 2016, revealing findings consistent with biceps tendonitis with no evidence of complete tendon disruption, supraspinatus and infraspinatus tendonitis or tendinopathy with no rotator cuff tear, and moderate impingement related to osteophytes at the level of the acromioclavicular ("AC") joint. A right elbow MRI performed on June 14, 2016, revealed no evidence of biceps tendon disruption; mild common extensor tendinitis, likely chronic in nature; and no evidence of acute fracture, joint effusion, or complete tendon or ligamentous disruption. An addendum to the MRI report of the right elbow dated June 14, 2016, noted findings suggestive of an avulsion of the bicep tendon from its insertion onto the distal radius with retraction of the tendon stump.

On July 8, 2016, Mr. Bragg underwent an open right distal biceps tendon repair for a post-operative diagnosis of right distal biceps tendon rupture, performed by Stanley Tao, M.D. Mr. Bragg developed an infection in his right elbow following the July 8, 2016, surgery, and on July 20, 2016, Luis Bolano, M.D., performed wound debridement of the skin, subcutaneous tissue, and muscle with abscess drainage. The post-operative diagnosis was right elbow infection status post distal biceps tendon repair.

Mr. Bragg followed up with Dr. Tao on July 25, 2016. Mr. Bragg reported that his right arm was doing well, and he did not have any complaints. Dr. Tao assessed Mr. Bragg with a strain of the muscle, fascia, and tendon of the long head of the right biceps and post-surgical wound infection. Between August 1, 2016, and August 15, 2016, Mr. Bragg followed up with Dr. Tao several times. The assessment was wound infection following procedure; strain of muscle, fascia, and tendon of the long head of the right biceps; bicipital tendinitis of the right shoulder; and impingement syndrome of the right shoulder. Mr. Bragg reported some erythema over the surgical incision site. Dr. Tao recommended surgical intervention for a recurrent abscess.

On August 16, 2016, Dr. Bolano performed a right elbow debridement of proximal radius osteomyelitis with sequestrectomy. The post-operative diagnosis was right elbow recurrent osteomyelitis, status post biceps tendon reconstruction. Mr. Bragg followed up with Dr. Bolano on August 18, 2016. Physical examination of the right elbow revealed no overt signs of skeletal osteo changes, but Mr. Bragg still had signs of radiocapitellar instability. Dr. Bolano assessed Mr. Bragg with infection following a procedure. Mr. Bragg was instructed to continue with his current therapy.

Mr. Bragg was seen by Richard Knapp, M.D., on September 13, 2016, for an evaluation of his right elbow and right shoulder injuries. A physical examination revealed range of motion abnormalities in the right elbow and right glenohumeral joint. By diagnosis update form dated November 8, 2016, Dr. Knapp requested that right elbow wound infection status post biceps tendon repair and right radial head dislocation be added as compensable diagnoses in the claim.

2

A claim administrator's order dated December 13, 2016, added adjustment disorder with depressed mood as a compensable diagnosis in the claim. The order further noted that right biceps tendon strain, traumatic rupture of the right bicep tendon, and right shoulder sprain were previously accepted as compensable diagnoses in the claim.[3] By claim administrator order dated February 1, 2017, right radial head dislocation was added as a compensable diagnosis in the claim.

On January 24, 2017, Mr. Bragg underwent an MRI of his right shoulder, revealing moderately severe degenerative narrowing with articular irregularity, hypertrophy, and cortical bone edema in the AC joint; the supraspinatus tendon was thickened with inhomogeneous signal as well as irregularity of the articular surface suggesting small incomplete articular surface tears; findings consistent with adhesive capsulitis; and a transverse tear with juxta cortical edema in the posterior glenoid labrum.

Mr. Bragg followed up with Dr. Bolano on January 30, 2017. Dr. Bolano indicated that Mr. Bragg continued to have limited extension and difficulty with supination and pronation of the right wrist. Mr. Bragg reported increased discomfort with most weightbearing and decreased sensation. Dr. Bolano assessed strain of muscle, fascia, and tendon of long head of the right biceps; infection following a procedure; bicipital tendinitis of the right shoulder; unspecified open wound of the right elbow; sprain of the right rotator cuff capsule; instability of the right elbow joint; flexion contracture of the right elbow; and osteomyelitis of the right elbow. By order dated February 10, 2017, the claim administrator authorized Dr. Bolano's request for radial head resection and contracture release. On February 21, 2017, Dr. Bolano performed right elbow radial head resection with debridement of the radiocapitellar joint and a right elbow anterior capsular release with intraoperative fluoroscopy. The post-operative diagnosis was right elbow radial head lateral dislocation and right elbow flexion contracture.

On April 3, 2017, Mr. Bragg was seen by Dr. Bolano. Dr. Bolano noted that Mr. Bragg's right shoulder symptoms had failed to improve with conservative treatment. Dr. Bolano further noted that the right shoulder imaging showed evidence of tendinopathy /impingement and an articular surface tear of the right rotator cuff. Dr. Bolano recommended right shoulder arthroscopy with subacromial decompression and debridement of a partial rotator cuff tear. On May 26, 2017, Dr. Bolano performed right shoulder arthroscopy with a type II SLAP repair, subacromial decompression, and partial rotator cuff tear debridement. The post-operative diagnosis was right shoulder partial rotator cuff tear with chronic impingement syndrome and right shoulder biceps tendon SLAP tear, type II.

---

[3] The initial compensability order was not included in the lower record.

Mr. Bragg followed up with Dr. Bolano on May 16, 2022, and he reported swelling in his right elbow and grinding and popping in his right shoulder. A physical examination of the right elbow revealed a positive Tinel's sign at the cubital tunnel. Dr. Bolano assessed Mr. Bragg with post-traumatic osteoarthritis of the right elbow, impingement syndrome of the right shoulder, and right cubital tunnel syndrome. Dr. Bolano noted that Mr. Bragg's post-traumatic osteoarthritis of the right elbow had failed to improve with conservative treatment, and he requested authorization for a proximal radius resection arthroplasty. Dr. Bolano also requested authorization for a right shoulder subacromial steroid injection for Mr. Bragg's impingement syndrome of the right shoulder, and right cubital tunnel release surgery. On September 20, 2022, the claim administrator issued an order denying authorization for right cubital tunnel release based upon a finding that cubital tunnel syndrome was not a compensable diagnosis in the claim. Mr. Bragg protested this order.

Dr. Bolano authored a letter dated October 20, 2022. Dr. Bolano detailed Mr. Bragg's previous medical history related to the compensable injury and the requested diagnoses. Dr. Bolano noted that he had recently requested authorization for a right elbow procedure that included debridement, resection of a bone spur for radiocapitellar impingement, and ulnar nerve release; and for an injection of the right shoulder for treatment of Mr. Bragg's continued mild-to-moderate rotator cuff tendinitis symptoms. Dr. Bolano opined that Mr. Bragg would require ongoing care for the sequelae related to his original injury, and further, that the requested medical treatment is necessary and reasonable, and related to these conditions associated with his initial biceps tendon rupture.

On October 24, 2022, the claim administrator issued an order denying the addition of post-traumatic arthritis as a compensable diagnosis based upon the report of David Soulsby, M.D.[4] Mr. Bragg protested this order. By diagnosis update form dated November 9, 2022, Dr. Bolano requested that post-traumatic osteoarthritis of the right elbow, cubital tunnel of the right elbow, instability of the right elbow joint, flexion contracture of the right elbow, and impingement of the right shoulder be added to the claim as compensable diagnoses.

On January 10, 2023, Mr. Bragg was evaluated by Joseph Grady, M.D. Mr. Bragg denied any prior injuries or problems to the right upper extremity prior to the injury on June 3, 2016. Dr. Grady assessed status post right shoulder arthroscopic labral repair, rotator cuff tear debridement, and internal derangement superimposed upon pre-existing AC joint osteophyte impingement; status post open right distal biceps tendon repair complicated with a now resolved postoperative wound infection; status post right elbow debridement of proximal radial osteomyelitis and subsequent radial head resection with anterior capsule release; and very mild right elbow instability. Dr. Grady noted that he was

---

[4] Dr. Soulsby's report was not included in the lower record.

4

not provided with any EMG/NCS reports to confirm the diagnoses of peripheral neuropathy, bilateral carpal tunnel syndrome, and cubital tunnel syndrome. Dr. Grady further noted that carpal tunnel syndrome was reportedly present in both Mr. Bragg's arms. Dr. Grady also noted that Mr. Bragg's right shoulder MRI of June 14, 2016, showed pre-existing osteoarthritic degenerative changes with osteophyte formation causing impingement of the right rotator cuff. Dr. Grady found Mr. Bragg to be at MMI and in need of no further treatment. However, Dr. Grady did agree with Dr. Bolano's requests to add instability of the right elbow joint and flexion contracture of the right elbow as compensable diagnoses in the claim.

Dr. Bolano authored a letter dated September 21, 2023, noting that he had recommended an injection of the right shoulder and further elbow surgery to remove some ectopic bone that was related to Mr. Bragg's prior elbow surgery. Additionally, Dr. Bolano opined that the diagnoses of cubital tunnel syndrome, post-traumatic arthritis, and the other diagnoses associated with the shoulder and elbow were related to Mr. Bragg's compensable injury of June 3, 2016.

On April 1, 2024, Jennifer Lultschik, M.D., performed a medical evaluation of Mr. Bragg. Dr. Lultschik concluded that Mr. Bragg's compensable injury had resulted in the following diagnoses: traumatic rupture of the right distal biceps tendon; right radial head dislocation; right shoulder strain, resolved; flexion contracture of the right elbow; and right elbow instability. Dr. Lultschik opined that Mr. Bragg's right shoulder impingement syndrome was a chronic preexisting condition that was related to congenital structural issues of the shoulder, preexisting degenerative changes of the rotator cuff, and preexisting degenerative changes of the AC joint. Dr. Lultschik further opined that Mr. Bragg's right cubital tunnel syndrome was not causally related to the compensable injury. Regarding Dr. Bolano's request to add post-traumatic osteoarthritis of the right elbow to the claim, Dr. Lultschik noted that there was no objective imaging evidence to support the diagnosis. Dr. Lultschik found Mr. Bragg to be at MMI and in need of no further medical treatment.

On January 24, 2023, the claim administrator issued two orders based on Dr. Grady's report. The first added right elbow instability and flexion contracture of the right elbow to the claim as compensable conditions but denied the addition of cubital tunnel syndrome of the right elbow and impingement syndrome of the right shoulder. The second denied authorization for a right shoulder and subacromial steroid injection. Mr. Bragg protested these orders.

On August 6, 2024, the Board affirmed the claim administrator's orders, which 1) denied authorization for right cubital tunnel release; 2) denied authorization for a right shoulder and subacromial steroid injection; and 3) denied the addition of post-traumatic arthritis, cubital tunnel syndrome of the right elbow, and impingement syndrome of the

5

right shoulder to the claim as compensable conditions. Mr. Bragg now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

Mr. Bragg argues that the preponderance of the evidence establishes that his post-traumatic arthritis, cubital tunnel syndrome, and impingement syndrome are the result of the compensable injury. Mr. Bragg further argues that those diagnoses require further treatment, thus, the right cubital tunnel release, and the right shoulder and subacromial steroid injection should have been approved as medically related and reasonably required to treat the compensable injury. We disagree.

"'In order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment.' Syl. pt. 1, *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970)." Syl. Pt. 1, *Sansom v. Workers' Comp. Comm'r*, 176 W. Va. 545, 346 S.E.2d 63 (1986). The claim administrator must provide a claimant with medically related and reasonably necessary treatment for a compensable injury. *See* West Virginia Code § 23-4-3 (2005) and West Virginia Code of State Rules § 85-20 (2006).

See *Blackhawk Mining, LLC, v. Argabright*, No. 22-ICA-262, __ W. Va. __, __ S.E.2d __, 2023 WL 3167476 (Ct. App. May 1, 2023) ((affirmed by the Supreme Court of

Appeals of West Virginia in *Argabright v. Blackhawk Mining, LLC*, No. 23-381, 2024 WL 3984505 (Aug. 27, 2024) (memorandum decision)).

Here, the Board determined that Mr. Bragg failed to establish that the requested diagnoses of post-traumatic arthritis, cubital tunnel syndrome of the right elbow, and impingement syndrome of the right shoulder should be added to the claim as compensable diagnoses. The Board found that both Drs. Grady and Lultschik opined that there was no medical evidence to support a diagnosis of right elbow osteoarthritis or right cubital tunnel syndrome in the claim. The Board further found that both Drs. Grady and Lultschik opined that the osteophytes causing Mr. Bragg's right shoulder impingement were preexisting and unrelated to the compensable injury, and there is no credible medical evidence of record to refute their findings on that point. Further, the Board noted that Dr. Grady found evidence of impingement in both of Mr. Bragg's shoulders. Finally, the Board found that the right cubital tunnel release and right shoulder injection were requested as treatments for noncompensable conditions.

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Bragg has failed to demonstrate with reliable medical evidence that post-traumatic arthritis of the right elbow, cubital tunnel syndrome of the right elbow, and impingement syndrome of the right shoulder should be added as compensable diagnoses in the claim. Additionally, we conclude that the Board was not clearly wrong in determining that Mr. Bragg failed to establish that the requests for a right shoulder injection and right cubital tunnel release are medically necessary and reasonably related to the compensable injury. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in affirming the claim administrator's orders which 1) denied authorization for right cubital tunnel release; 2) denied authorization for a right shoulder and subacromial steroid injection; and 3) denied the addition of post-traumatic arthritis, cubital tunnel syndrome of the right elbow, and impingement syndrome of the right shoulder to the claim as compensable conditions.

Accordingly, we affirm the Board's August 6, 2024, order.

Affirmed.

**ISSUED:** March 24, 2025

7

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White